IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Bankruptcy No. 17-52553-G |
| | § | |
| CARLOS VEGA-LARA | § | |
| AND AURA CECILIA VEGA, | § | |
| | § | |
| DEBTORS | § | |
| | § | |
| CARLOS VEGA-LARA | § | CIVIL ACTION NO: 5:18-CV-00796-RCL |
| AND AURA CECILIA VEGA, | § | |
| APPELLANTS | § | |
| VS. | § | |
| MARY K. VIEGELAHN | § | |
| APPELLEE | § | |
| IN RE: | § | Bankruptcy No. 17-52761-G |
| | § | |
| ANNETTE MARIE DIAZ | § | |
| | § | |
| DEBTOR | § | |
| | § | |
| ANNETTE MARIE DIAZ | § | CIVIL ACTION NO: 5:18-cv-00798-RCL |
| APPELLANT | § | |
| VS. | § | |
| MARY K. VIEGELAHN | § | |
| APPELLEE | § | |

## MEMORANDUM OPINION

This case raises the question of how tax refunds should be treated when calculating disposable monthly income under a Chapter 13 bankruptcy plan. The appeal stems from two consolidated cases involving the same trustee, Mary K. Viegelahn ("Trustee"). In both cases, the Bankruptcy Court agreed with Trustee that under Section 4.1 of the District Plan adopted by the Western District of Texas, the debtors were permitted to retain only the first $2,000 of their tax refunds and were required to turn over any excess to the Trustee as disposable income. Carlos

Vega-Lara, Aura Cecilia Vega, and Annette Marie Diaz ("Debtors") claim that this is improper for two primary reasons. Debtors' first main argument is that Section 4.1 of the District Plan expressly contravenes provisions of the Bankruptcy Code, the Local Rules, and the Official Forms and thus should be stricken from Debtors' plans. Debtors' second main argument is that Section 4.1 of the District Plan impermissibly circumvents the motion, notice, and hearing requirements established in the Bankruptcy Code and Bankruptcy Rules. For the reasons set forth below, this Court affirms the ruling of the Bankruptcy Court and finds that Debtors must relinquish any tax refunds in excess of $2,000 to the Trustee in accordance with Section 4.1 of the District Plan.

## JURISDICTION

This court has jurisdiction over appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." 28 U.S.C. § 158(a). As explained in the separate order denying Appellee's Motion to Dismiss Appeal of Order Granting Trustee's Motion to Strike, appellate jurisdiction over all issues raised on appeal is proper. [Vega-Lara District Court ECF #17].[1]

## STANDARD OF REVIEW

Whether the District Plan expressly contravenes the Bankruptcy Code, Local Rules, or Official Forms and whether the District Plan impermissibly circumvents the motion, notice, and hearing requirements of the Bankruptcy Code and Bankruptcy Rules are both issues of law and thus are reviewed de novo. *See Drive Fin. Services, LP v. Jordan*, 521 F.3d 343, 346 (5th Cir.

---

[1] "ECF" denotes the electronic court filing number and represents the court filing number where the document appears on the Court's electronic docket sheet. Because two cases have been consolidated on appeal, each ECF citation is preceded by either "Vega-Lara" or "Diaz." Additionally, because there are separate ECFs for the Bankruptcy Court and District Court, each ECF citation is preceded by either "Bankruptcy Court" or "District Court."

2008); *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999). It is important to bear in mind, however, that this Court owes considerable deference to the Bankruptcy Court's interpretation and application of its "own local rules adopted to promote efficiency." *Matter of Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984).

## BACKGROUND

### I. Carlos Vega-Lara & Aura Cecilia Vega

The first of the two consolidated cases began on November 3, 2017 when Carlos Vega-Lara and Aura Cecilia Vega filed a Voluntary Joint Petition for relief under Chapter 13 of the Bankruptcy Code and filed their initial Chapter 13 Plan. [Vega-Lara Bankruptcy ECF #1 and #2]. On February 10, 2018 they filed their Schedule I (Official Form 106I) and Schedule J (Official Form 106J). [Vega-Lara Bankruptcy ECF #14, #15, #16, and #17]. Their Schedule I indicated that they expected to receive $6,034 in monthly net income, including $428 from "other monthly income." *Id.* This "other monthly income" was calculated by dividing their projected annual tax refund ($5,136) by twelve months. Brief of Appellants at 3 [Vega-Lara District Court ECF #13]. Their Schedule J indicated that they expected their monthly living expenses to be $5,109. [Vega-Lara Bankruptcy ECF #14, #15, #16, and #17]. Subtracting the monthly expenses on Schedule J from the monthly income on Schedule I, Debtors projected their monthly disposable income to be $925 for the applicable commitment period of three years. Brief of Appellants at 3-4 [Vega-Lara District Court ECF #13].

The Trustee, however, objected to this plan, so Debtors filed their First Amended Chapter 13 Plan providing for approximately a 24% dividend payable to general unsecured creditors. [Vega-Lara Bankruptcy ECF #17]. After the Bankruptcy Court held a hearing on the plan and the Trustee again objected to confirmation, Debtors filed their Second Amended Chapter 13 Plan.

[Vega-Lara Bankruptcy ECF #21]. On April 4, 2018, The Trustee filed an objection to this plan as well. [Vega-Lara Bankruptcy ECF #24]. On May 4, 2018, the Bankruptcy Court issued a Memorandum Opinion and Order Granting Chapter 13 Trustee's Objection to Confirmation of First Amended Chapter 13 Plan. [Vega-Lara Bankruptcy ECF #28]. Debtors filed another Chapter 13 Plan on May 30, 2018, and the Bankruptcy Court confirmed it on May 18, 2018. [Vega-Lara Bankruptcy ECF #37 and #41]. This confirmation is the final order from which Debtors appeal.

## II. Annette Marie Diaz

The second of the two consolidated cases began on December 1, 2017 when Annette Marie Diaz filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code and filed her initial Chapter 13 Plan. [Diaz Bankruptcy ECF #1 and #2]. On February 13, 2018, she filed her Amended Schedule I (Official Form 106I) and Amended Schedule J (Official Form 106J). [Diaz Bankruptcy ECF #14, #15 and #16]. Her Schedule I indicated that she expected to receive $3,201 in monthly net income, including $792 from "other monthly income." *Id.* This "other monthly income" was calculated by dividing her projected annual tax refund ($9,504) by twelve months. Brief of Appellant at 3 [Diaz District Court ECF #12]. Debtor's Schedule J indicated that she expected her monthly living expenses to be $1,696. [Diaz Bankruptcy ECF #14]. Subtracting the monthly expenses on Schedule J from the monthly income on Schedule I, Debtor projected her monthly disposable income to be $1,505 for the applicable commitment period of three years. [Diaz Bankruptcy ECF #14 and #16].

Also on February 13, 2018, Debtor filed her First Amended Chapter 13 Plan providing for approximately a 12% dividend payable to general unsecured creditors. [Diaz Bankruptcy ECF #16]. The Bankruptcy Court then held a hearing regarding the plan, and the Trustee filed an

4

objection. Memorandum Opinion Denying Confirmation of Debtor's First Amended Plan [Diaz Bankruptcy ECF #33]. On March 7, 2018, Debtor filed her Second Amended Chapter 13 Plan; she also filed amended Schedules I and J indicating that she actually expected to receive $2,681 in monthly net income, including $272 from "other monthly income" based on a projected annual tax refund of $3,264 divided by twelve months. [Diaz Bankruptcy ECF #35 and #37]. Her projected monthly disposable income remained unchanged. *Id.* The Trustee filed an objection to this amended plan, which the Bankruptcy Court granted, prompting Debtor to file a new Chapter 13 Plan on May 30, 2018. [Diaz Bankruptcy ECF #40]. The Bankruptcy Court confirmed this new Plan on July 18, 2018. [Diaz Bankruptcy ECF #43]. This confirmation is the final order from which Debtor appeals.

## III. Chapter 13 of the Bankruptcy Code

Chapter 13 of the Bankruptcy Code is a kinder alternative to Chapter 7. The benefits of proceeding under Chapter 13 instead of under Chapter 7 include staving off foreclosure or seizure of property, retaining possession of nonexempt assets, obtaining discharge of debts not otherwise dischargeable under Chapter 7, and staving off collections activities from non-dischargeable obligations such as student loans and tax liabilities. *See* 11 U.S.C. § 707(b). In exchange for these numerous benefits, however, debtors electing to proceed under Chapter 13 must pay creditors the maximum amount that they can afford. *See* H.R. Rep. 109-31(I), p. 2, 2005 U.S.C.A.N.N. 88, 89.

## IV. Western District of Texas' District Plan

Bankruptcy Courts have the statutory and rulemaking authority to promulgate and enforce local bankruptcy rules. The United States Supreme Court has "the power to prescribe by

general rules the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075 (2018). Pursuant to Fed. R. Bank. P. 9029(a), Bankruptcy Courts may mandate local rules governing practice and procedure. Pursuant to Rule 3015.1, the Western District of Texas issued its Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan on October 16, 2017, thereby adopting a form Chapter 13 plan to be used throughout the Western District of Texas. Order #17-02. The District Form Chapter 13 Plan went into effect on November 1, 2017.

The first of the two provisions of the District Plan at issue on appeal is Section 4.1, which reads as follows:

4.1 Tax Refunds.

All tax refunds received by Debtor (or either Debtor if a joint case) while the chapter 13 case is pending shall be allocated as set forth below:

1) The total amount of the aggregate tax refund(s) received for any tax period that exceeds $2,000.00 shall, upon receipt, be paid and turned over to the Trustee as additional disposable income and such amount shall increase the base amount of the Plan. The Plan shall be deemed modified accordingly, and the Trustee will file a notice of plan modification within 21 days of receipt of the tax refund;

2) This $2,000.00 annual limit shall apply to both joint-debtor and single-debtor cases;

3) The $2,000.00 otherwise retained by Debtor must first be applied to any Plan arrearages;

4) Notwithstanding subparagraph (1) above, Debtor may file a notice to retain the portion of the tax refund otherwise payable to the Plan under subparagraph (1) with twenty-one (21) day negative notice as set forth in Local Rule 9014(a) if, at the time of receipt of a refund, Debtor's Plan provides for the payment of 100% of allowed general unsecured claims within the term of this Plan. If the Trustee does not object within the twenty-one (21) day negative notice period, Debtor may retain that portion of the tax refund.

> The Trustee is hereby authorized to endorse a tax refund check if the check is made payable to Debtor.

Essentially, Section 4.1 dictates that any tax refund in excess of $2,000 must be turned over to the trustee as additional disposable income. In both cases, Debtors at some point attempted to strike through Section 4.1, claiming that it was invalid. The Bankruptcy Court found this to be improper and therefore refused to approve any plan wherein Section 4.1 was stricken.

The second of the two provisions of the District Plan at issue on appeal is Section 8 (titled "Nonstandard Plan Provisions") which allows debtors to add their own nonstandard provisions to their Chapter 13 Plans. In both cases, Debtors at some point included the following language in Section 8: "Section '4.1 Tax refunds' is stricken. Debtors' projected tax refund is amortized and treated as income on Schedule I." The Bankruptcy Court found this provision to be improper and therefore refused to approve any plan wherein Section 8 attempted to void Section 4.1.

## ANALYSIS

**I. The District Plan Does Not Expressly Contradict the Bankruptcy Code, Local Rules, or Official Forms.**

The Bankruptcy Court was correct in determining that the District Plan does not expressly contravene the Bankruptcy Code, Local Rules, or Official Forms. Debtors seem to forget that Chapter 13 was designed not only to benefit debtors by providing a more lenient alternative to Chapter 7, but also to benefit creditors by ensuring that they are repaid the maximum amount possible. When Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), it explicitly stated that the bill's purpose was "to

improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors . . . The heart of the bill's consumer bankruptcy reforms . . . is . . . to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. 109-31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89. When debtors choose to proceed under Chapter 13, "they must agree to a court-approved plan under which they pay creditors out of their future income" for the duration of the plan. *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (citing §§ 1306(b), 1321, 1322(a)(1), and 1328(a)). With both the letter and the spirit of BAPCPA in mind, the Bankruptcy Court's rationale for requiring Debtors to abide by Section 4.1 is sound.

In lieu of adopting the National Plan, the Western District of Texas chose to adopt an individualized District Plan to govern Chapter 13 proceedings. This District Plan is compliant with Rule 3015.1. The Western District chose to implement a uniform plan so that Chapter 13 trustees, creditors' counsel, and debtors' counsel could efficiently and inexpensively review and prepare plans. The Western District specifically noted in the Consolidated Standing Order that adopting this District Plan was "necessary for the efficient and orderly administration of Chapter 13 cases." *In re Diaz*, 586 B.R. 588 (Bankr. W.D. Tex. 2018). The Western District is not alone in choosing to adopt its own form plan—three other districts in Texas have also adopted their own plans, as have 90% of districts nationwide. *See In re Parkman*, 589 B.R. 567, 571 (Bankr. S.D. Miss. 2018). Allowing Debtors to strike through or otherwise negate provisions in the District Plan that they do not like would render the District Plan meaningless. Uniformity and efficiency were important to the Western District when they decided to adopt this plan, and it is not this Court's place to interfere with the discretion granted to individual districts to adopt their

own plans. Permitting Debtors to alter or delete provisions of the District Plan also violates Rule 3015.1 and thus cannot be tolerated.

Appellants are correct that the District Plan must still comply with Chapter 13 as well as with other applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1). Under Chapter 13, debtors have the exclusive right to file a plan. 11 U.S.C. § 1321. That exclusive right to file a plan, however, does not mean that trustees or bankruptcy courts cannot object to the form of the plan. As the Bankruptcy Court in this case aptly pointed out:

> The distinction between *filing* a chapter 13 plan and *determining the form* of a chapter 13 plan is captured in Rule 3015(b) (setting deadlines for a debtor to file a plan and (c) requiring debtor to use either an Official Form or Local Form for a plan). Moreover, as discussed herein, the Federal Rules of Bankruptcy Procedure provide that bankruptcy courts may impose both local rules and a form plan. Under Debtors' argument, any debtor could propose a chapter 13 plan in any form the debtor wanted, thereby creating an administrative nightmare for the court and the litigants in reviewing every provision of every plan filed, thereby increasing the cost of chapter 13 and significantly reducing efficiency in the process. The Court finds Debtors' argument unavailing. *In re Vega-Lara*, No. 17-52553-CAG 2018 WL 2422427 at *5 (Bankr. W.D. Tex. May 4, 2018).

The Trustee objected to Debtors' plans for failure to meet § 1325(a)(1), which requires all plans to comply with Chapter 13. The Bankruptcy Code says that the Chapter 13 bankruptcy estate is comprised not only of property existing at the time the plan is filed, but also any property the debtor acquires after commencement of the case. 11 U.S.C. §1306. This means that the estate acquires property interests continuously after the commencement of the case, which

9

includes refunds. A refund is property of the estate whose possession can be with someone other than the debtors. The District Plan in this case provides for possession of refunds in excess of $2,000 to be with trustees for distribution to creditors. The Bankruptcy Code allows a plan to provide for payment of all or part of a claim against a debtor from property of the estate or the property of a debtor. 11 U.S.C. §1322(b)(8). The statute also directs that all plans must provide for the submission of all or such a portion of future earnings or other income of the debtor to the supervision and control of the trustee as is necessary for execution of the plan. 11 U.S.C. § 1322(a)(1). This includes the tax refunds at issue here. Bankruptcy Courts within the 5th Circuit have repeatedly held that tax refunds are the property of the estate and thus debtors must turn them over to Chapter 13 trustees as disposable income. *See In re Pautin*, 521 B.R. 754, 763 (Bankr. W.D. Tex. 2014) (acknowledging that multiple courts within the 5th Circuit have held that tax refunds in Chapter 13 proceedings are the property of the estate and must be turned over to the trustee). Section 4.1 of the District Plan thus complies with §§ 1322(a) and (b)(8) and with BAPCPA as a whole. It is important to note that if Debtors' plans proposed 100% repayment of general unsecured creditors, Section 4.1 would have entitled them to keep the entirety of their tax refunds. As previously noted, however, their plans did not even come close to proposing 100% repayment, so they are not entitled to keep more than $2,000 of their refunds.

We now turn to Debtors' contention that Section 4.1 does not comply with BAPCPA's requirement that treatment of disposable income be "individualized." Contrary to Debtors' assertion, Section 4.1 actually gives Bankruptcy Courts discretion when accounting for refund income. Refund income is inherently speculative in nature at the time a Chapter 13 plan is formulated, so by allowing Debtors to retain $2,000, Section 4.1 is giving them the ability to use that money for any unforeseen expenses. This is important because Chapter 13 plans are

typically very tight and do not leave room to cover unexpected costs. Although Section 4.1 accounts for refunds in the same way for all three of the Debtors in this case, it does not treat debtors who propose 100% repayment of general unsecured creditors in the same way—in fact, as noted above, debtors who propose 100% repayment are entitled to retain the entirety of their refunds. Moreover, although Section 4.1 treats debtors who do not propose 100% repayment in the same way, they are entitled to use the money however they see fit. They are not forced to spend it in certain ways or at certain times; it is theirs to do with whatever they wish. Therefore, Section 4.1 is not overly standardized and does not expressly contravene the Bankruptcy Code or Rules. Rather, it balances the requirement of individualization with the need for efficiency that the District Plan seeks to promote.

In addition, Debtors argue that Schedule I's instructions require Debtors to include annual tax refunds as monthly income, thereby forcing them to doubly account for their refunds because of Section 4.1. As the Bankruptcy Court noted, however, the national Official Form 113 that accompanies the Schedule I instructions gives Debtors the ability to determine how their income tax refunds will be treated under a Chapter 13 plan. *In re Vega-Lara*, No. 17-52553-CAG 2018 WL 2422427 at *7 (Bankr. W.D. Tex. May 4, 2018). If this Court were to read Section 4.1 as contradictory to the Schedule I, then Official Form 113 would also be contradictory. In light of Official Form 113, it is clear that Schedule I anticipates alternative ways to account for tax refunds other than merely by listing them on the Schedule I, with Official Form 113 being a prime example of one such alternative. Essentially, as long as Debtors turn over all refunds in excess of $2,000 as required by Section 4.1, they are not obligated to list their refunds as projected income on their Schedule I forms. If the refunds are accounted for in their own portion of the plan (in this case through Section 4.1), then the concerns expressed in Debtors' briefs that

they will be prosecuted for perjury are completely unfounded, as they will not have committed perjury. Therefore, the Trustee is correct that Debtors will not be forced to doubly account for their refunds if they simply do not list them on their Schedule I forms and instead follow the instructions in Section 4.1 of the District Plan.

Debtors have proposed an alternative accounting method in lieu of Section 4.1. To allow Debtors to account for their tax refunds in the manner they suggest, however, would:

> enable a debtor to maintain a secret savings account, in the form of tax withholdings, at the expense of their unsecured creditors. By requiring the turnover of these future tax refunds to the Chapter 13 Trustee, a court is simply correcting a debtor's error of over-estimating his or her tax liability made when completing the means test. By correcting the error, the amount of the debtor's disposable income automatically increases by the amount of the tax refund the debtor received, which ... rightfully should be paid to the debtor's creditors. *In re La Plana*, 363 B.R. 259, 266-67 (Bankr. M.D. Fla. 2007).

Section 4.1 strikes the appropriate balance between a debtor's needs (paying for unanticipated expenses with the first $2,000 of a refund) and the needs of their creditors (being repaid as much as Debtors can afford). Indeed, this is the balance that Chapter 13 itself seeks to promote, thus indicating that Section 4.1 complies not only with the letter of BAPCPA, but also with its spirit.

Debtors also ignore the fact that even if Section 4.1 did not exist and they had been permitted simply to include their projected refunds on the Schedule I, doing so would not necessarily have meant that their plans would have been confirmed. The Trustee could still have

objected to their projections and overall plans, and the Bankruptcy Court could have chosen not to confirm their plans. In light of the Bankruptcy Court's findings that the amounts to be paid to creditors in the proposed plans were not feasible, it is unlikely that Debtors in either case would have been permitted to keep the extra money from the refund that they claim they are owed. For example, Mrs. Vega testified that her refund is being used to pay delinquent utility bills and private school tuition; this has been occurring without the Bankruptcy Court's permission, demonstrating how the plans that Debtors proposed were not feasible. *In re Vega-Lara*, No. 17-52553-CAG 2018 WL 2422427 at \*3-4, \*15 (Bankr. W.D. Tex. May 4, 2018).

Furthermore, Debtors' policy-based argument that Section 4.1 will lead people to choose Chapter 7 over Chapter 13 has no merit. Even though debtors are not permitted to retain more than $2,000 of their tax refunds under the District Plan, Chapter 13 is still a significantly better alternative to Chapter 7. Chapter 13 provides benefits such as staving off foreclosure or seizure of property, retaining possession of nonexempt assets, obtaining discharge of debts not otherwise dischargeable under Chapter 7, and staving off collections activities from non-dischargeable obligations such as student loans and tax liabilities. 11 U.S.C. § 707(b). Moreover, Appellee aptly notes that a debtor can simply decrease his or her withholding exemptions to reduce the amount of the refunds received and thus increase the monthly income available for ongoing expenses. For these reasons, this Court is not the least bit concerned about Section 4.1 dissuading debtors from choosing Chapter 13 over Chapter 7.

Finally, although Carlos Vega-Lara and Aura Cecilia Vega[2] challenge the Bankruptcy Court's decision to strike their Motion to Clarify, they admit in their Reply Brief that remanding

---

[2] Only Carlos-Vega-Lara and Aura and Cecilia Vega filed a Motion to Clarify, so this paragraph does not pertain to Annette Marie Diaz.

to the Bankruptcy Court for the requested clarification is "not necessary" and "would not serve judicial economy." Reply Brief of Appellants at 21-22 [Vega-Lara District Court ECF #15]. As explained in our Order Denying Appellee's Motion to Dismiss Appeal of Order Granting Trustee's Motion to Strike, we do have jurisdiction over this issue; however, the difference between the two proposed plans is not substantial enough to change the ultimate result of this appeal. There were two main differences between the plans: (1) the second plan proposed a 2% lower dividend to general unsecured creditors than did the first plan; and (2) the first plan struck through Section 4.1 while the second plan negated Section 4.1 through the nonstandard provision in Section 8. The Bankruptcy Court's refusal to confirm the plan certainly did not stem from the 2% difference in repayment. Additionally, we find that as for the second difference, Debtors are not entitled to strike through Section 4.1, nor are they allowed to void Section 4.1 via a nonstandard provision in Section 8. If this Court were to remand for clarification, the Bankruptcy Court would still arrive at the same ultimate conclusion that it did before—that neither of the plans is proper—and Debtors would simply appeal again.[3] Perhaps the Bankruptcy Court should not have struck Debtors' Motion to Clarify from the record without explanation, but at this stage of the litigation, the propriety of that decision has no bearing on the ultimate outcome of the case. Neither of Debtors' two plans is proper for the reasons explained above, so this Court will not go through the extraneous step of remanding for clarification.

## II. The District Plan does not Impermissibly Circumvent the Motion, Notice, or Hearing Requirements of the Bankruptcy Code or Bankruptcy Rules.

Nothing about Section 4.1 infringes upon Debtors' rights to proper notice or the opportunity for a hearing under the Bankruptcy Code or Rules. The last sentence of Section 4.1.1

---

[3] Carlos Vega-Lara and Aura Cecilia Vega have specifically announced their intention to appeal a second time if this Court remands for clarification. Reply Brief of Appellants at 22 [Vega-Lara District Court ECF #15].

states that a debtor may retain a refund "if the Trustee does not object within the 21-day negative notice period." Debtors contend that by "negative implication," this phrase means that Debtors may not retain the refund if the Trustee objects because a mere objection will disallow the retention of a refund. Brief of Appellants at 32 [Vega-Lara District Court ECF #13]. This is a completely illogical interpretation of Section 4.1. A mere objection does not automatically prevent Debtors from retaining their refunds. On the contrary, an objection triggers the precise motion, notice, and hearing process that Debtors claim Section 4.1 denies them. Debtors certainly must know this to be the case, as every time the Trustee objected to one of their Chapter 13 plan proposals, they were afforded the opportunity to explain to the Bankruptcy Court why they felt that their plan was feasible and in accordance with the law. The Trustee's objections were never once automatically confirmed without the opportunity for Debtors to contest those objections. Simply because the Bankruptcy Court ultimately sided with the Trustee does not mean that Debtors were deprived of the ability to argue for confirmation of their plans. Therefore, Section 4.1 does not impermissibly preclude any motion, notice, or hearing requirements of the Bankruptcy Code or Rules.

## **CONCLUSION**

For the aforementioned reasons, the Bankruptcy Court was correct in holding that Section 4.1 of the District Plan does not expressly contravene the Bankruptcy Code, Local Rules, or Official Forms. The Bankruptcy Court was also correct in determining that Section 4.1 of the District Plan does not impermissibly circumvent the motion, notice, or hearing requirements established in the Bankruptcy Code and Bankruptcy Rules. Therefore, Debtors must relinquish any tax refund in excess of $2,000 as disposable income in accordance with Section 4.1 of the District Plan.

Based on the foregoing, the holding of the Bankruptcy Court will be AFFIRMED in each case in the accompanying orders.

Date: September 19, 2019

_____
ROYCE C. LAMBERTH
United States District Court Judge